BENNETT, Plaintiff in Error, v. HIMMELBERGER, Defendant in Error.

St. Louis Court of Appeals, February 27, 1906.

MASTER AND SERVANT: Safe Place to Work: Contributory Negligence. In an action by a carpenter against his employer for damages received by falling from the upper porch of the building on which he was working, the fall being caused by the giving way of a balustrade held temporarily in place by frail fastenings, the evidence for plaintiff is examined and held to show conclusively that he was guilty of negligence which contributed to his injury such that a nonsuit was properly ordered.

Error to Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

R. G. *Ranney* and *Geo. Bullock* for plaintiff in error.

Before the verdict of a jury can be set aside, it should appear that there is no evidence to support it. Mere insufficiency is not sufficient. Steube v. I. & F. Co., 85 Mo. App. 640; James v. Life Association, 148 Mo., 1-16, 49 S. W. 978; Duerst v. St. L. Stamping Co., 163 Mo. 607, 63 S. W. 827. In passing upon a demurrer to the evidence, every reasonable deduction to be drawn from the evidence, which tends to sustain the cause of action set forth in the petition, should be considered as absolutely true. Pauck v. St. Louis Dressed Beef & Provision Co., 159 Mo. 467, 61 S. W. 806; Haven v. Railroad Co., 155 Mo. 216, 55 S. W. 1035; Schermerhorn Bros. & Co. v. Herold, 81 Mo. App. 461. Where the facts bearing on the issue are disputed, or where they are undisputed but admit of different constructions and inferences, it must be left to the jury. Deitring v. St. Louis Transit Co., 109 Mo. App. 524-541, 85 S. W. 140; Casey v. Hoover, 89 S. W. 330.

*Oliver & Oliver* for defendant in error.

In an action based upon the alleged negligence of the defendant, and there is no evidence tending to establish negligence, it is the duty of the trial court to direct a verdict for the defendant. Pueschell v. Wire & Iron Works, 79 Mo. App. 464. 2 Thom. on Trials, secs. 1667, 1680; Zimmermann v. Railroad, 71 Mo. 491; Milburn v. Railroad, 86 Mo. 104; Hudson v. Railroad, 101 Mo. 30, 14 S. W. 15; 1 Shearm. and Redf. Neg. (4 Ed.), secs. 56, 112n; Schlereth v. Railroad, 96 Mo. 509, 10 S. W. 66; Engleking v. Railroad, 187 Mo. 164, 86 S. W. 89.

GOODE, J.—This plaintiff suffered an injury to his leg by a fall due to the giving away of a balustrade

on the porch of the defendant's house. The present action was instituted to recover the consequent damages. Defendant owned an old residence in the city of Cape Girardeau, which he was having remodeled. Plans had been drawn by an architect for the work and the work itself was being carried on under the superintendency of George W. Kirgen, a builder. Bennett was working for Kirgen as a carpenter. At the time of the accident Bennett was fifty years old or upwards and had been a carpenter since he was eighteen. A porch of two-stories in the rear of the house was undergoing reconstruction. The plans according to which the house was to be remodeled provided for utilizing a portion of this porch for a room or library and removing the rest of it. When the accident occurred the upper, or second-story, floor of the porch had been taken up, leaving nothing but the joists or girders on which the floor had rested. The stairway leading from the lower floor to the upper one had also been removed. A small balustrade surrounded the opening or well-hole at the head of the stairway on the upper floor. Though the floor had been removed, this balustrade was left standing, but the intention was to remove it. Meanwhile it was held in place by a lath or board which ran down from one of the roof joists of the porch and was "tacked" to the railing of the balustrade. Hence, the balustrade itself was lose, or "rickety," as one of the witnesses expressed it. The accident occurred on September 13th when plaintiff had been working on the house since the latter part of July and on any part of it where he was directed to work. In the course of his employment he had been on the upper floor of the rear porch and knew the condition it was in. He swore that he did not know the balustrade was loose, but supposed it was nailed to the joists. In the afternoon of the day of the accident he was told by Kirgen to go upstairs and get some pieces of lumber composing part of a scaffolding which had been erected around the upper porch.

One of the pieces wanted was about two feet higher than his head. To knock this piece loose from the timber to which it was nailed, he had to strike an overhead blow. There being no floor, he stood on one of the girders. He was a right-handed man, but delivered this blow with a hatchet held in his left hand. Plaintiff was six feet tall and weighed nearly or quite one hundred and seventy pounds. To support himself on the girder he put his hand on the balustrade, which was from three and one-half to four feet in front of him, leaned forward and struck the overhead blow against the board he wished to knock loose. His pressure and the impulse of the blow, overthrew the balustrade and plaintiff fell and by one of his ankles catching under a railing, his leg was hurt.

The charge of negligence against defendant is that the balustrade had been left insecurely attached to the floor joists of the porch and would no longer support the weight of a person; but notwithstanding that fact, had been allowed to remain in an apparently secure position when it was dangerous to persons moving about it; that this danger was unknown to plaintiff, but by ordinary care could have been known to defendant through his superintendent, Kirgen.

The answer attempts to state the facts of the accident in detail. Its substance is that defendant was not guilty of any negligence, that plaintiff caused his injury by his own negligence and also that the dangerous condition of the balustrade was apparent, and that plaintiff, in throwing his weight on it, assumed the risk of being hurt by its giving away.

At the conclusion of the testimony introduced by plaintiff the court directed the jury to return a verdict in favor of the defendant; which having been done, judgment was entered on the verdict and plaintiff appealed.

Plaintiff testified that he knew the balustrade was to be removed and that he knew the floor and stairway had been removed. The latter facts, of course, were

plainly visible. Plaintiff's testimony was drawn out to great length and was full of unnecessary minutiae and detail elicited by a tedious cross-examination; but the substance of what he said is that though he knew the balustrade was to be removed, he supposed it was left as firm as it had been before the reconstruction of the house began; that he stood on one of the girders, reached over with his right hand to the balustrade three and one-half or four feet from him, and while in this position struck at the board two feet above his head, and the balustrade yielding to his pressure, he fell and was hurt. Considering that the floor and stairway were gone, that the space under plaintiff was open except where traversed by the joists and girders, and the manner in which the balustrade was kept in place by a lath or timber running to a joist above, whatever negligence there was in connection with the accident was the plaintiff's own and consisted in leaning against the balustrade without first testing its stability by a shake or push with his hand to learn whether or not it would yield. This conclusion is borne out by the testimony of the other witnesses introduced in plaintiff's behalf. Koehrer, one of those witnesses, testified in effect and nearly in words, that the balustrade was just "stayed" with a small lath so that it would not fall away, and the lath would give evidence to anybody that could see it to look out for himself; that he would not have risked jumping on it or jarring it for anything; that he would not have got on it for protection; that it was left in that condition simply to keep any one from stepping into the well-hole; that a man of ordinary prudence and thought would have seen at once that it was a mere temporary structure and that the slat held the balustrade and railing to keep a thoughtless person from stepping into the well-hole; that he thought no prudent man would have put his hand on the balustrade for support; a mechanic of good sense ought to have known it was not supported.

Bennett v. Himmelberger.

Herbst, a mechanic and another witness for plaintiff, testified that the balustrade "looked pretty shaky" and it seemed to him any prudent or careful mechanic would have noticed that it was dangerous; that he thought a mechanic of prudence would have known that the slat by which it was held was temporary; and he considered that any man who leaned his weight against it to knock out a piece of timber above his head was reckless, and no prudent mechanic would do such an act; that he made no special examination of the balustrade, but, in passing by, saw it looked dangerous. This testimony and all the facts in proof, impress the conviction that any person who paid the least attention to the condition of the balustrade could not fail to realize its insecurity and the rashness of using it as a means of support. It was a slight affair in the first place and as the stairway it guarded was gone and there was no floor under it, it looks like clear imprudence for a man to lean against it. This was especially true in plaintiff's case; for he was experienced in the dangers incident to housebuilding and had been working in sight of the balustrade for weeks. He did more than merely balance himself by putting his hand on the railing. He leaned over three or four feet while striking a blow at an object two feet above his head. This was done without any care to ascertain if the balustrade was fastened firmly to the joists, and was plainly an act either thoughtless or reckless. It would have been taking a great risk if the balustrade had been in fact nailed to the joists as plaintiff swore he believed it was. Any one can see the rashness of a heavy man leaning so far over against a comparatively frail structure, when, if it fell with him, he would go down between the joists of an upper story. Moreover, the mode in which the balustrade was held in an upright position was open to plaintiff's gaze, and must have been observed by him if he had been looking out for his own safety, as a prudent man should. Every other workman saw the railing was held up by a lath, one end

of which was tacked to it and the other end to the joist above. We can conceive of no theory on which defendant can be convicted of a lack of ordinary care to provide a reasonably safe place for plaintiff to work, simply from the fact that the balustrade was left standing. This in truth was done for the safety of the employees, and was a reasonable precaution. No doubt a safety device so constructed that it invites a person to use it in a manner which may result in harm to him, will make a case of negligence. But the essential question always is, whether there was reason to anticipate the use of a contrivance in a dangerous manner—whether its appearance would allure or repel such a use. The uncontradicted testimony shows that a casual glance at the balustrade had warned Herbst, another workman, that it was insecure, and plaintiff was as experienced as Herbst. Koehrer, too, realized its insecurity. That the balustrade was held in place by a lath was plainly visible, and we doubt if defendant's superintendent had any reason to anticipate that a workman exercising common prudence would be misled into the belief that the balustrade would support him. Be that as it may, the evidence for plaintiff conclusively showed that his own negligence was the main, if not the only, cause of the accident.

The judgment is affirmed. All concur.